## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| JANE DOE #1,<br>JOHN DOE #2,<br>JOHN DOE #3,<br><br>*Plaintiffs*,<br><br>v.<br><br>KRISTI NOEM, in her official capacity as Secretary of Homeland Security; the DEPARTMENT OF HOMELAND SECURITY; and TODD LYONS, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement,<br><br>*Defendants.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### Introduction

1.      Plaintiffs are students at the University of Wisconsin-Madison. Each of them was admitted to the United States on an F-1 Student Visa, but the federal government has terminated their student status without legal justification or explanation. Plaintiffs bring this lawsuit under the Administrative Procedure Act and Due Process Clause of the Fifth Amendment to challenge the federal government's unlawful termination of their student status. *See* 5 U.S.C. §§ 702, 706; U.S. CONST. amend. V.

2.      Since beginning their studies, Plaintiffs have not violated or otherwise failed to maintain their student statuses. They have not committed serious criminal offenses. They have remained in good academic standing. The Plaintiffs are currently studying Information Sciences,

Business Analytics, and Epidemiology.

3.      On or about April 8, 2025, U.S. Immigration and Customs Enforcement ("ICE") abruptly terminated Plaintiffs' Student and Exchange Visitor Information Systems ("SEVIS") records without explanation. That day, Plaintiffs each received emails from the University of Wisconsin-Madison's International Students Services office ("ISS") informing them of the cancellation by the federal government, and that the university "did not terminate your SEVIS record." The U.S. government did not communicate the SEVIS termination to any of the Plaintiffs.

4.      The Plaintiffs' visas were revoked at varying times: two received visa revocation emails after ISS notified them and one received it before. However, Plaintiffs' SEVIS records were terminated on the same date. Again, they were given no explanation.

5.      Plaintiffs challenge the Department of Homeland Security's ("DHS") misuse of the SEVIS system to further unlawful ends. It appears that in the first two weeks of April, DHS engaged in a nationwide action to terminate student status unlawfully, trying to coerce Plaintiffs, along with hundreds of other students across the country, into "self-deporting."[1]

6.      To be clear, Plaintiffs are not challenging the revocation of their F-1 student *visas* in this action. They are challenging DHS' termination of their F-1 student *status*. "F-1 student status and F-1 student visas are not one in the same." *Doe 1, et al. v. Bondi, et al.*, No. 1:25-cv-01998-VMC, at 4 (N.D. Ga. Apr. 18, 2025). The F-1 visa "refers only to the document that nonimmigrant students receive to enter the United States, whereas F-1 student status refers to the students' formal immigration classification once they enter the country." *Id.* Thus, if the student's F-1 visa is revoked, their F-1 student status is still valid, and the student is still permitted to continue their

---

[1] Jaweed Kaleem, *Caught off-guard, California Colleges Scramble to Determine Scope of Student Visa Cancellations*, LOS ANGELES TIMES, (April 7, 2025 3:38 PM), https://www.latimes.com/california/story/2025-04-07/ucla-california-universities-concerns-cancellations-student-visas.

course of study.

7.     By terminating Plaintiffs' SEVIS records, DHS has effectively ended their student statuses. By forcing them out of status, DHS has created pretext for future adverse immigration actions against them. Plaintiffs are now experiencing intense mental, emotional, and financial suffering because they cannot continue with their studies and fear being detained and removed if they do so.

8.     DHS' targeting and abuse of Plaintiffs is unlawful. SEVIS was created by Congress to be an administrative tool for oversight and compliance of international student visas.[2] SEVIS is not a discretionary enforcement tool or a weapon of immigration policy. Rather, the regulations prescribe three distinct circumstances in which DHS can terminate status, and none apply to plaintiffs. *See* 8 C.F.R. § 214.1(d). Nor have plaintiffs fallen out of status due to their own actions, such as engaging in unauthorized employment, providing false information to DHS, or committing a violent crime. *See* 8 C.F.R. § 214.1(e)–(g).

9.     The SEVIS terminations are without legal justification. They come without regard to constitutional guarantees of procedural due process. They are far beyond DHS' statutory authority, and they fail to comply with even DHS' own regulations. 8 C.F.R. §§ 214.1, 214.2. Accordingly, Plaintiffs bring this action under the Administrative Procedure Act ("APA"), the Fifth Amendment of the U.S. Constitution, and the *Accardi* doctrine.

### Jurisdiction and Venue

10.     This Court has jurisdiction over the present action based on 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346(b) (federal defendant), and 28 U.S.C. §§ 2201–2 (authority to issue declaratory judgment when jurisdiction already exists).

---

[2] Illegal Immigration Reform and Immigrant Responsibility Act of 1996 § 641, Pub. L. No. 104-208, 110 Stat. 3009-706 (codified as 8 U.S.C. 1372).

11.    Venue is proper with this Court under 28 U.S.C. § 1391(e) because this is a civil action in which Defendants are employees or officers of the United States, acting in their official capacity. All Plaintiffs reside in this District. 28 U.S.C. § 1391(e)(1)(C).

12.    Venue is also proper with this Court under 28 U.S.C. § 1391(e)(1)(B) because the events giving rise to this claim occurred in the Western District of Wisconsin. Plaintiffs live and are present in this District; they study at the University of Wisconsin-Madison; and their SEVIS records are updated and maintained by officials in this District.

## Parties

1.    Jane Doe #1 is a Chinese national and first-year Ph.D. student at the University of Wisconsin-Madison studying information. She resides in Madison, Wisconsin. Plaintiff Doe #1's SEVIS record was terminated on or about April 8, 2025.

2.    John Doe #2 is a Chinese national and second-year master's student at the University of Wisconsin-Madison studying business analytics. He resides in Madison, Wisconsin. Plaintiff Doe #2's SEVIS record was terminated on or about April 8, 2025.

3.    John Doe #3 is a Korean national and third-year Ph.D. student at the University of Wisconsin-Madison studying epidemiology. He resides in Madison, Wisconsin. Plaintiff Doe #3's SEVIS record was terminated on or about April 8, 2025.

4.    Defendant Kristi Noem is the Secretary of Homeland Security and has ultimate authority over DHS. In that capacity and through her agents, Defendant Noem has broad authority over the operation and enforcement of the immigration laws. Defendant Noem is sued in her official capacity.

5.    Defendant DHS is a cabinet-level department of the Executive Branch of the federal government and is an "agency" within the meaning of 5 U.S.C. § 551(1). DHS includes various component agencies, including ICE.

6.      Defendant Todd Lyons is the Acting Director of ICE and has authority over the operations of ICE. In that capacity and through his agents, Defendant Lyons has broad authority over the operation and enforcement of the immigration laws. Defendant Lyons is sued in his official capacity. ICE is responsible for the termination of Plaintiffs' SEVIS records.

### Legal Framework

7.      A nonimmigrant visa controls a noncitizen's admission into the United States, not their continued stay. Once admitted on F-1 nonimmigrant status, a student is granted permission to remain in the United States for the duration of status as long as they continue to meet the requirements established by the regulations governing their visa classification in 8 C.F.R. § 214.2(f), such as maintaining a full course of study and avoiding unauthorized employment.

8.      SEVIS is a database managed by Defendant DHS' Student and Exchange Visitor Program ("SEVP"). SEVIS is an administrative tool which collects information from Designated School Officials ("DSOs") into one database which DHS uses to track nonimmigrant students' compliance with the terms of their status.

9.      SEVIS termination is governed by SEVP policies and regulations. Termination must be based on a student's failure to maintain status.

10.     DHS regulations distinguish between two separate ways a student may fall out of status: (1) a student who "fails to maintain status" and (2) an agency-initiated "termination of status."

11.     Under the first category, a student falls out of status through some act or omission of their own as described in 8 C.F.R. § 214.1. Under 8 C.F.R. §§ 214.1(e)–(g), nonimmigrant students can fall out of status through conduct violations, such as engaging in unauthorized employment, providing false information to DHS, or being convicted of a crime of violence with a potential sentence of more than a year under 8 C.F.R. § 214.1(g). Minor misdemeanor offenses do

not meet this threshold for termination based on criminal history.

12.    Under the second category, DHS can terminate a student's SEVIS records *only if* one of three conditions are met: (1) a previously granted waiver under [8 U.S.C. § 1182(d)(3) or (4)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d); *see also Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 176 (3d Cir. 2019).

13.    Accordingly, the revocation of a visa does not constitute failure to maintain status and cannot therefore be a basis for SEVIS termination. If a visa is revoked prior to a student's arrival to the United States, then the student may not enter, and the SEVIS record is terminated. But the SEVIS record may not be terminated as a result of a visa revocation *after* a student has been admitted into the United States, because the student is permitted to continue the authorized course of study.[3]

14.    ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[4] Rather, if the visa is revoked, the student is permitted to pursue their course of study in school, but upon departure, the SEVIS record is terminated and the student must obtain a new visa from a consulate or embassy abroad before returning to the United States.[5]

15.    A student who has not violated their F-1 status, even if their visa is revoked, cannot have a SEVIS record terminated based on 8 U.S.C. § 1227(a)(1)(C)(i) (failure to maintain status) or

---

[3] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), *available at* https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

[4] *Id.*

[5] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016), *available at* https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

any other deportability ground.

16.    The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal. *Jie Fang*, 935 F.3d at 183. There is no administrative appeal of a denial to reinstate F-1 status. The termination of a SEVIS record constitutes a final agency action for purposes of APA review.[6] Under Section 706 of the APA, courts must "hold unlawful and set aside" agency actions which are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), "contrary to constitutional right," § 706(2)(B), or "without observance of procedure required by law," 5 U.S.C. § 706(2)(D).

### Factual Allegations

#### A.  Defendants' national practice of terminating student status in SEVIS

17.    In April 2025, the U.S. government—principally through DHS, ICE, and the Department of State—initiated an unprecedented and sweeping campaign of student visa revocations and SEVIS status terminations, destabilizing the lives of hundreds of international students and universities across the country.[7]

18.    Reports from national and local media confirm that over 1,000 international students across at least 160 institutions lost their legal status in the span of mere weeks, often without prior

---

[6] *Id.* at 185.

[7] *See* Annie Ma, Makiya Seminera & Christopher L. Keller, *Visa Cancellation's Sow Panic for International Students, with More Than 1,000 Fearing Deportation*, AP NEWS (Apr. 17, 2025 11:57 AM), https://apnews.com/article/international-student-f1-visa-revoked-college-f12320b435b6bf9cf723f1e8eb8c67ae. Plaintiffs do not challenge the revocation of their visas in this lawsuit; they only seek reinstatement of their student status in SEVIS.

notice, meaningful explanation, or opportunity to contest the decision.[8] These terminations were frequently triggered by minor criminal history.[9]

19.    Unlike prior agency practice, which involved some level of coordination with DSOs or institutional administrators,[10] these revocations were executed by DHS directly through SEVIS. The lack of transparency and procedural safeguards created chaos within educational institutions and upended the lives of lawful F-1 visa holders.[11]

20.    Universities scrambled to understand their responsibilities and whether they were authorized to assist affected students by reissuing I-20s or intervening with DHS.[12]

21.    Based on information and belief, the federal government has adopted a policy of coercing international students into self-deportation by leveraging ambiguous student status revocations in the SEVIS system, coupled with visa revocation notices and threatening language, rather than affording affected individuals constitutionally or statutorily guaranteed procedures.

### B.  Plaintiff Jane Doe #1

22.    Plaintiff Jane Doe #1 is a Chinese national and first-year Information Ph.D. student at the University of Wisconsin-Madison. She is expected to graduate in May 2029. She serves as a project assistant to her advisor's research project, a role that is an essential part of her doctoral

---

[8] *See* Annie Ma, Makiya Seminera & Christopher L. Keller, *supra* note 7; Rafael Romo, *New Lawsuit Alleges Traffic Stops, Dismissed Cases Used as Criteria to Revoke Student Visas*, CNN Apr. 16, 2025, https://www.cnn.com/2025/04/16/us/international-visa-revocations-traffic-stops/index.html.

[9] Romo, *supra* note 8.

[10] U.S. DEP'T HOMELAND SEC., *Terminate a Student*, Study in the States (Nov. 7, 2024), https://studyinthestates.dhs.gov/sevis-help-hub/student-records/completions-and-terminations/terminate-a-student.

[11] *Smashing the Student Visa System*, Inside Higher Ed (Apr. 3, 2025), https://www.insidehighered.com/news/global/international-students-us/2025/04/03/how-trump-wreaking-havoc-student-visa-system.

[12] *Id.*

program requirements.

23.     She is currently researching driving data privacy. She has a quickly approaching academic deadline on May 22, 2025, for her research.

24.     After graduation, she hopes to continue to pursue work that pushes the boundaries of human-computer interaction, usable privacy, and accessible technologies in the United States. She believes her work will help create practical solutions for individuals with disabilities and other underserved groups by broadening digital accessibility and inclusion.

25.     She first came to study in the United States on an F-1 Visa in 2019. She most recently entered the United States on an F-1 Visa in December 2024. She was issued a Form I-20 to enroll in her Ph.D. program and she has been engaged in a full course of study. She has never fallen out of status.

26.     On April 8, 2025, Doe #1 received notice from ISS that her SEVIS status was terminated. The reason given was: "OTHER – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated."

27.     On April 11, 2025, she received an email from the U.S. Embassy in Beijing, which said: "Additional information became available after your visa was issued. As a result, your F-1 visa with expiration date 30-MAY-2029 has been revoked under Section 221(i) of the United States Immigration and Nationality Act, as amended." The email further stated, "Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin."

28.     On April 11, 2025, the U.S. Embassy in Beijing sent her an email regarding

revocation of her visa:

> [Y]our F-1 visa with expiration date 30-May-2029 have been revoked under Section 221(i) of the United States Immigration and Nationality Act . . . .

> Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

29.     Doe #1 does not know the factual basis for her SEVIS termination. She has not violated the terms of her status. Her only criminal history was an arrest for misdemeanor assault in the fourth degree in Seattle, Washington in violation of WASH. REV. CODE § 9A.36.041 (2024), for which the district attorney declined to file charges. The case was never filed, and she has never been convicted of a crime. She has no other criminal history.

30.     Fourth-degree misdemeanor assault—for which Doe #1 was never charged—is not a crime of violence and does not carry a penalty of one year or more.

31.     Since her SEVIS record was terminated, Doe #1 has been experiencing intense levels of stress, daily headaches, and itchy hives due to the stress. She has lost her health insurance that came with her project assistant position, leaving her to deal with untreated health problems. She has been having difficulty sleeping and is in constant fear of losing her chance to finish her Ph.D. and to be forced to leave the country.

32.     She has ceased her research as a project assistant. She had to return her work laptop with all her research data, code, and draft figures despite an upcoming deadline. This has also stopped her work on a research paper she and her advisor planned to submit for a conference in September 2025.

**C.  Plaintiff John Doe #2**

33.     John Doe #2 is a Chinese national and in his final semester of his Master's in Business Analytics. He is expected to graduate in next month, May 2025. He first entered the

United States on an F-1 Visa on June 11, 2019. He departed the United States in August 2020, and re-entered with his second F-1 Visa on June 14, 2022.

34.     Doe #2 received two emails regarding his status: one email from the U.S. Consulate General in Shenyang on March 18, 2024, and one email from the ISS office at the University of Wisconsin-Madison on April 8, 2025.

35.     The U.S. Consulate General Shenyang email from March 18, 2024, stated, in part, that "your U.S. visa has been revoked by the U.S. Department of State, the visa was revoked as of March 18, 2024." The email goes on to warn Doe #2 that, "information has come to light indicating that you may be inadmissible to the United States and ineligible to receive a visa, such that you should be required to reappear before a U.S. consular officer to establish your eligibility for a visa before being permitted to apply for entry to the Unites States."

36.     On April 8, 2025, Doe #2 received notice from ISS that his SEVIS record was terminated:

> ISS is writing to inform you that your SEVIS record was terminated on 04/08/2025 by the U.S. Student and Exchange Visitor Program (SEVP). The stated termination reason is "OTHER", with the explanation "Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated." A termination for this reason does not have a grace period to depart the U.S.

> ISS did not terminate your SEVIS record. Instead, ISS discovered that your SEVIS record was terminated during a regular review of an available SEVIS query . . . .

> All employment benefits, including on-campus employment and any practical training you may have had authorized, end immediately when a SEVIS record is terminated. Therefore, you no longer have authorization to work in the United States.

37.     The email gave no explanation for his visa revocation and warned him that he could be deported at any time.

38.     Following his SEVIS termination, Doe #2 has stopped attending classes physically. With less than a month left before graduation, this termination puts in question his ability to complete his degree and obtain a positive determination on his Optional Practical Training

("OPT") application submitted on April 1, 2025. OPT is a temporary work authorization to gain additional experience in his field of study.

39.    Doe #2 is unaware of the factual basis for the termination of his SEVIS status. His only interaction with law enforcement was related to a driving while intoxicated ("DWI") offense under Section 577.010 of the Missouri Revised Statutes from March 18, 2024. However, all charges were dropped on December 2024, following an Agreement for Deferred Prosecution.

40.    Doe #2's DWI charge—which was ultimately dropped—is not a crime of violence, nor is it punishable by more than a year in prison.

41.    The unlawful termination of Doe #2's SEVIS record and status has jeopardized his ability to finish his degree in the United States. He has been unable to attend classes in person, interact with professors, and make general preparations for graduation.

42.    Further, the SEVIS termination has caused Doe #2's severe anxiety, fearing for his safety and permanence in the United States. As a result of the unlawful termination of his SEVIS record, Doe #2 has been unable to sleep well and has remained in his apartment out of fear that he will be detained by ICE. He is worried that he won't be able to complete his degree and has less than one month left of his program.

**D.  Plaintiff John Doe #3**

43.    Plaintiff John Doe #3 is a Korean national and third-year Epidemiology Ph.D. student at the University of Wisconsin-Madison.

44.    He is passionate about his work and his research. He is examining how changes in body habits, such as Body Mass Index, affect the progression of obstructive sleep apnea over time. The goal of his research is to improve screening, risk prediction and early intervention strategies. He believes it has the potential to inform clinical practice and public health policy in the United States.

45.    He also has served as a Teaching Assistant for the past two years. He teaches two

fundamental biostatistics courses required for all first-year graduate students in the Epidemiology program. He in part wants his SEVIS record restored so he can continue to work on his research and continue instructing a new generation of epidemiologists.

46.    He most recently came to study in the United States on an F-1 Visa in 2022. He was issued a Form I-20 to enroll in his Ph.D. program and he has been engaged in a full course of study.

47.    On April 8, 2025, Doe #3 received notice from ISS that his SEVIS status was terminated. "ISS is writing to inform you that your SEVIS record was terminated on 04/08/2025 by the U.S. Student and Exchange Visitor Program (SEVP). The stated termination reason is 'OTHER', with the explanation 'Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated.'"

48.    The next day, April 9, 2025, the U.S. Embassy in Seoul sent him an email regarding revocation of his visa:

> [Y]our F-1 visa with expiration date 24-May-2027 has been revoked under Section 221 (i) of the United States Immigration and Nationality Act . . . .
>
> Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

49.    Doe #3 does not know the factual basis for his SEVIS termination. He has not violated the terms of his status. His criminal history is limited to five speeding tickets, citations for operating without proof of insurance and defective speedometer, and a misdemeanor conviction for operating a vehicle while intoxicated ("OWI") in violation of IND. CODE § 9-30-5-1(a) (2024). He received a 60-day suspended sentence, 35 hours of community service, a fine, and 180 days of supervised probation. He completed the community service, paid the fine, finished his probation, and all other requirements.

50.    Neither Doe #3's traffic-related infractions nor his OWI are crimes of violence.

Nor are the offenses punishable by more than a year in prison.

51.     Since he received notice of his SEVIS termination, Doe #3 has been experiencing stress, anxiety, and mental anguish. He is struggling to sleep. He avoids leaving his home for fear of detention and deportation. He worries he will have to abandon his degree and lose the future he has built in the United States.

**Joinder Statement**

52.     Plaintiffs' cases are properly joined under FED. R. CIV. P. 20(a)(1). Plaintiffs assert that their claims that arise out of the same series of transactions, occurrences, or events—namely, the unlawful and nationwide termination of SEVIS records by Defendants in the first two weeks of April 2025. Each plaintiff received notification that their SEVIS record was terminated on or about April 8, 2025.

53.     These terminations were based on similar or identical grounds, carried out through the same government systems and policies, and resulted in nearly identical injuries across Plaintiffs, including the loss of lawful immigration status, disruption of education and employment, personal anxiety and worry, and the imminent risk of detention and removal, among numerous other adverse consequences.

54.     Plaintiffs' claims also involve common questions of law and fact, including:

a.  Whether Defendants acted within the scope of their legal authority under 8 C.F.R. §§ 214.1(d)–(g);

b.  Whether the SEVIS terminations violated Plaintiffs' rights under the Due Process Clause of the Fifth Amendment;

c.  Whether Defendants failed to provide adequate notice and opportunity to be heard prior to terminating lawful student status; and

d.  Whether the SEVIS terminations must be set aside under the APA as arbitrary, capricious, or contrary to law, and not in accordance with the agency's own procedure.

55.    Permissive joinder in this case will promote judicial efficiency, avoid unnecessary duplication of proceedings, and ensure consistent adjudication of these shared legal and factual issues. Minor factual differences among the Plaintiffs' circumstances are comparatively minimal compared to the common questions these cases present. *See Lee v. Cook Cnty., Ill.*, 635 F.3d 969, 971 (7th Cir. 2022) (noting in permissive joinder cases, *any* question of law or fact common to all plaintiffs in the action is sufficient, even where the common question is not the predominate issue, under FED. R. CIV. P. 20(a)(1)(B)).

56.    Accordingly, joinder of Plaintiffs in this action is appropriate and warranted. All Plaintiffs assert the right to relief arising out of the Defendants' termination of their SEVIS status on or around April 8, 2025, and Plaintiffs share the common questions of law around the legality of Defendants' actions under 8 C.F.R. § 214.1(d), the APA, and Fifth Amendment Due Process Clause.

## Causes of Action

### COUNT I

**Administrative Procedure Act**
**Arbitrary and Capricious Agency Action – 5 U.S.C. § 706(2)(A)**

57.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

58.    This court should set aside DHS' termination of all three Plaintiffs' student statuses in SEVIS as arbitrary and capricious and not in accordance with law under 5 U.S.C. § 706(2)(A). Final agency action can be set aside if it is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law. *Id.* Final agency actions are arbitrary if they fail to make "a rational

connection between the facts found and the [determination] made." *Cook Cnty., Ill. v. Wolf*, 962 F.3d 208, 229 (7th Cir. 2020) (quoting *Motor Vehicle Mfrs. Ass'n U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)); *see also Smith v. Garland*, 103 F.4th 1244, 1254 (7th Cir. 2024). DHS makes no rational connection between any facts regarding Plaintiffs and termination of their SEVIS records.

59.     DHS' termination of a SEVIS record is a final agency action because it ends F-1 student status, and there is no avenue for review or appeal. The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal. *See Jie Fang*, 935 F.3d at 182-183 ("[E]ven if the students attempt to pursue administrative procedures for reinstatement, there is no mechanism to review the propriety of the original termination order.").

60.     DHS' terminations of Plaintiffs' SEVIS records were not in accordance with law, specifically 8 C.F.R. §§ 214.1 and 214.2. There are two ways a student's F-1 status can be terminated: (1) through the student's own actions or (2) government-initiated termination. *See* 8 C.F.R. §§ 214.1(d)–(g). Conditions were not met for either type of termination.

61.     A nonimmigrant student visa holder can fail to maintain their status by: (1) engaging in unauthorized employment; (2) providing false information to DHS; or (3) being convicted of a crime of violence with a potential sentence of more than a year. 8 C.F.R. §§ 214.1(e)–(g).

62.     The record does not support, nor do Defendants allege through any communication, that Plaintiffs engaged in this type of impermissible conduct. None of the Plaintiffs engaged in unauthorized employment, nor have they provided false information to DHS. Their minor criminal history—non-violent misdemeanors—does not rise to the level contemplated in 8 C.F.R. § 214.1(g).

63.     Doe #1 previously had a dropped assault in the fourth degree charge under WASH. REV. CODE § 9A.36.041 (2024). Doe #2 entered into a deferred prosecution agreement after being charged with driving while intoxicated under MO. ANN. STAT. § 577.010 (West). His charge was subsequently dropped. Doe #3 was convicted of operating a vehicle while intoxicated in violation of

IND. CODE § 9-30-5-1(a) (2024), for which he was ordered to pay a fine and perform community service.

64.     Defendants have no statutory or regulatory authority to terminate Plaintiffs' SEVIS records or student statuses. Government-initiated terminations may occur only under the circumstances detailed in 8 C.F.R § 214.1(d): (1) Previously granted waiver under 8 U.S.C. §§ 1182(d)(3) or (d)(4) is revoked; (2) Congress introduces a private bill to confer Legal Permanent Resident status; or (3) DHS publishes notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. No plaintiff included in this complaint has received a waiver under §§ 1182(d)(3) or (d)(4) (nonetheless had it revoked); no plaintiff has had a private bill introduced Congress on their behalf; and there has been no publication or notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination of student statuses. Because none of the plaintiffs fulfill any one of these conditions at § 214.1(d), Defendants' actions were not supported by statute or regulation.

65.     Notably, DHS' visa revocation does not constitute failure to maintain status or a reason for termination under § 214.1(d). ICE's own guidance confirms that "[v]isa revocation is not, in itself, a cause for termination of the student's SEVIS record."[13]

66.     For these reasons, Defendants' termination of Plaintiffs' statuses in SEVIS was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A).

---

[13] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.

## COUNT II

### Violation of Fifth Amendment Due Process – U.S. Const. amend. V

67.     Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

68.     Plaintiffs have a constitutionally protected property interest in their SEVIS registration. *See ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059 (9th Cir. 2015) (recognizing protected property interest in participating in exchange visitor program); *Brown v. Holder*, 763 F.3d 1141, 1148 (9th Cir. 2014) (recognizing protected property interest in nondiscretionary application for naturalization).

69.     Once a student is lawfully admitted to the United States in F-1 status and complies with the regulatory requirements of that status, the continued registration of that student in SEVIS is a statutorily conferred nondiscretionary government benefit, governed by specific and mandatory regulations.

70.     8 C.F.R. § 214.2(f)(1)(iii) requires schools to "issue a form I-20 or successor form in SEVIS to any current student requiring extension of stay, practical training, and requests for employment authorization." For a student to amend or extend their stay, they must be able to present a properly endorsed Form I-20 or a new Form I-20. *See* 8 C.F.R. § 214.1(3)(iii)(b)(iv)(A). In other words, because SEVIS registration is necessary for a student to remain enrolled as an international student, Plaintiffs have a protected property interest in their SEVIS records. Termination of their SEVIS records deprives them of their student status property interest. Without a SEVIS record, students are deprived of their ability to receive I-20 forms and effectively their status as students.

71.     Defendants did not afford Plaintiffs adequate procedural rights prior to depriving them of their property interests: (1) Defendants terminated Plaintiffs' SEVIS records based on

improper grounds; (2) Defendants provided Plaintiffs no prior notice; (3) Defendants did not

directly communicate the termination to Plaintiffs—Plaintiffs only found out through the University

of Wisconsin's ISS office; and (4) Defendants did not provide Plaintiffs an opportunity to respond.

72.     Procedural due process typically requires the government to provide a person with

notice and an opportunity for a hearing before such a deprivation. *Twining v. New Jersey*, 211 U.S. 78,

110 (1908); *Jacob v. Roberts*, 223 U.S. 261, 265 (1912). Defendants failed to do so here. In any event,

"even if the students attempt to pursue the administrative procedures for reinstatement, there is no

mechanism to review the propriety of the original termination." *Jie Fang*, 935 F.3d at 182.

73.     DHS' failure to afford Plaintiffs adequate procedural rights prior to improperly

terminating their SEVIS records is a violation of Plaintiffs' Fifth Amendment Due Process rights.

<u>**COUNT III**</u>

**Administrative Procedure Act**
**Contrary to Constitutional Rights (Procedural Due Process) – 5 U.S.C. § 706(2)(B)**

74.     Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth

here.

75.     Under 5 U.S.C.§ 706(2)(B), this court should set aside DHS' SEVIS records

termination for Plaintiffs because that termination was contrary to Plaintiffs' Fifth Amendment Due

Process rights. "This court 'will hold unlawful and set aside agency action, findings, and conclusions'

that are…contrary to constitutional right, power, privilege, or immunity…" *Zero Zone, Inc. v. U.S.*

*Dep't of Energy*, 832 F.3d 654, 667 (7th Cir. 2016). As Count II provides, Plaintiffs' Fifth Amendment

Due Process rights have been violated.

76.     Plaintiffs have protected property interests in their SEVIS status and the government

did not afford them adequate procedural rights prior to improperly terminating their SEVIS records

in violation of Plaintiffs' Fifth Amendment Due Process rights. Because the government violated

Plaintiffs' Fifth Amendment Due Process rights, the Court is entitled to set aside the SEVIS terminations under 5 U.S.C. § 706(2)(B).

## COUNT IV

**Administrative Procedures Act**
**Without Observance of Procedure Required by Law – 5 U.S.C. § 706(2)(D)**

77.    Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

78.    Under the APA, courts must set aside agency actions taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(D); *see also* § 706 ("The reviewing court shall . . . hold unlawful and set aside agency action[.]") (emphasis added). This is a procedural challenge—not about what the agency decided, but how it made its decision.

79.    SEVIS records are controlled by DHS. Nevertheless, DHS cannot terminate records on a whim. They must observe procedures and meet the substantive conditions described in their own regulations. *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required.") (citing *Service v. Dulles*, 354 U.S. 363, 388 (1957); *Vitarelli v. Seaton*, 359 U.S. 535, 539–540 (1959)).

80.    DHS' actions regarding SEVIS are bound and limited by 8 C.F.R. § 214.1(d). Regulations are rules agencies write themselves. Once published, these agency rules are not merely optional guidance—they are commitments, binding on the agency as well as the public. Like a contract, they create mutual expectations and legally enforceable standards. *See Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954); *Vitarelli*, 359 U.S. at 539–40 (1959); *Service*, 354 U.S. at 372 (1957).

81.    The regulation at § 214.1(d) is very clear. DHS can unilaterally terminate SEVIS records when one of only three conditions are met: (1) a previously granted waiver under [8 U.S.C. § 1182(d)] is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress;

or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d); *see also Jie Fang*, 935 F.3d at 185.

82.     In this case, DHS never articulated why Plaintiffs' SEVIS records had to be terminated, which is itself a violation of the APA. But for the purposes of § 706(2)(D), Defendants' conduct is unlawful because none of the § 214.1(d) circumstances apply to Plaintiffs.

## COUNT V

### *Accardi* Claim

83.     Plaintiffs incorporate the allegations in the paragraphs above as though fully set forth here.

84.     Government agencies are bound to follow their own rules, even self-imposed procedural rules that limit otherwise discretionary decisions. *See U.S. ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267–68 (1954). Unilateral agency termination because of criminal activity requires a nonimmigrant's conviction of a crime of violence for which a sentence of more than one year imprisonment may be imposed. 8 C.F.R. § 214.1(g). None of the four plaintiffs meet this requisite condition. Therefore, Defendants failed to follow their own rules and procedures when they terminated Plaintiffs' SEVIS records.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court grant the following relief:

A. Assume jurisdiction over this matter;

B. Find the Plaintiffs properly joined under Federal Rule of Civil Procedure 20(a);

C. Grant Plaintiffs a temporary restraining order and preliminary injunction, restoring their status in SEVIS and enjoining their removal;

D. Declare that the termination of Plaintiffs' SEVIS status was unlawful;

E. Vacate and set aside DHS' termination of Plaintiffs' SEVIS status;

F.   Order that Defendants restore Plaintiffs' SEVIS record and status;

G.   Award costs and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. §

2412(b); and

H.   Grant such further relief as the Court deems just and proper.

Dated: April 23, 2025                    Respectfully submitted,

*/s/ Katherine Melloy Goettel*
KATHERINE MELLOY GOETTEL[14]
University of Iowa College of Law
Clinical Law Programs
380 Boyd Law Building
Iowa City, IA 52242-1113
Telephone: (319) 335-9023
Email: kate-goettel@uiowa.edu

*Counsel for Plaintiffs*

---

[14] The following University of Iowa students assisted with this pleading: Mikhail Acherkan, Jude Hagerman, Angela Pandit, Ian Reeves, Justin Rempe, Isabella Siragusa. Each student is enrolled in the University of Iowa's Federal Impact Litigation Clinic.

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 23, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to counsel for Defendants. I also provided a copy of this pleading by certified mail and electronic mail to the U.S. Attorney's Office.

*/s/ Katherine Melloy Goettel*
KATHERINE MELLOY GOETTEL
*Counsel for Plaintiffs*
