IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JANE DOE #1,
JOHN DOE #2,
JOHN DOE #3,

           Plaintiffs,

  v.

KRISTI NOEM, in her official capacity as
Secretary of Homeland Security, the U.S.
DEPARTMENT OF HOMELAND SECURITY,
and TODD LYONS, in his official capacity as Acting
Director of U.S. Immigration and Customs
Enforcement,

           Defendants.

OPINION AND ORDER

25-cv-317-wmc

---

Plaintiffs Jane Doe #1, John Doe #2, and John Doe #3 have filed a complaint for declaratory relief against Kristi Noem, in her official capacity as Secretary of Homeland Security, the U.S. Department of Homeland Security ("DHS"), and Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), claiming that DHS and ICE unlawfully terminated records of their F-1 student visa status in the Student and Exchange Visitor System ("SEVIS") in violation of both their rights to due process and the Administrative Procedure Act ("APA"), placing them in jeopardy of unjustified, accelerated detention and deportation without adequate notice or opportunity to be heard. (Dkt. #1.)

Plaintiffs have also filed an emergency motion for a temporary restraining order and preliminary injunction, asking the court to: (1) restore each plaintiff's F-1 student status in SEVIS, backdated to the date of termination; (2) require defendants to set aside the F-

1 student status termination decisions as to plaintiffs; (3) prohibit defendants from terminating plaintiffs' F-1 student status absent valid grounds and an adequate individualized pre-deprivation proceeding before an impartial adjudicator; (4) prohibit defendants from arresting, detaining, or transferring plaintiffs out of this court's jurisdiction without first providing adequate notice to both this court and plaintiffs' counsel as well as time to contest any such action; and (5) prohibit all defendants from initiating removal proceedings against or deporting any plaintiff on the basis of the termination of their F-1 student status. (Dkt. #3, at 1-2.)

The court held a telephonic hearing with counsel for all parties on April 25, 2025, during which the court entered an oral ruling on the motion for a temporary restraining order. For reasons set forth below and stated on the record at the hearing, the grant of plaintiffs' emergency motion for a temporary restraining order is now confirmed in writing.

## BACKGROUND[1]

### I. Non-Immigrant F-1 Visa Status

Congress has authorized non-immigrant F-1 visas for international students who enroll in approved academic institutions. 8 U.S.C. § 1101(a)(15)(F)(i). To be admitted in F-1 status, an applicant must present a Form I-20, issued by a certified school the applicant intends to attend. 8 C.F.R. § 214.2(f)(1). Once admitted with an F-1 visa, an international student is granted permission to stay in the United States as long as they

---

[1] Unless otherwise indicated, the following facts are taken from the complaint, the plaintiffs' declarations, and exhibits. (Dkt. ##1, 3.)

continue to meet the requirements of their visa classification by maintaining a full course of study or engaging in "authorized practical training following the completion of studies." 8 C.F.R. § 214.2(f)(5)(i).

In addition, to maintain lawful status, non-immigrant visa-holders (such as students with F-1 visas) may not engage in certain specified activity, such as engaging in unauthorized employment, providing false information to DHS, or engaging in "criminal activity." 8 C.F.R. § 214.1(e)-(g). Criminal activity, for purposes of maintaining status, is defined to include instances in which a student is "convict[ed] . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed [*i.e.*, a felony offense] (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g).

For an international student, any of the specified actions may result in the termination of their records in SEVIS, which is a centralized database that tracks international students' compliance with their F-1 status.[2]  As discussed further below, there is no evidence that any of the plaintiffs have engaged in activity that would warrant the termination of their SEVIS records or their F-1 student status. In the absence of a student's conduct causing a status violation, ICE can *only* terminate F-1 status under three circumstances: (1) a previously-granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) DHS publishes a notification in the Federal Register identifying national security, diplomatic, or public safety reasons for termination. 8 C.F.R. § 214.1(d). DHS cannot

---

[2] *See* About SEVIS, Dep't of Homeland Security, https://studyinthestates.dhs.gov/site/about-sevis (last visited April 25, 2025).

otherwise unilaterally terminate nonimmigrant status. *See Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 185 n. 100 (3d Cir. 2019). The reasons for these limitations on government action is that termination of a student's F-1 status opens them up to deportation.

## II. Plaintiffs' Individual Status

### A. Jane Doe #1

Plaintiff Jane Doe #1 is a Ph.D. student from the People's Republic of China, who has been enrolled in a doctoral program in Information Science at the University of Wisconsin-Madison ("UW-Madison") with an F-1 student visa since December 2024. As part of her doctoral program, Jane Doe #1 serves as a project assistant to her advisor's ongoing research project. Before enrolling at UW-Madison, she studied at Fort Hays State University from August 2019 to December 2020 with an F-1 visa, and she also studied at the University of North Carolina Chapel Hill from August 2021 to May 2023.

On April 8, 2025, Jane Doe #1 received an email from UW-Madison's International Student Services ("ISS"), stating that her SEVIS record had been terminated by the U.S. Student and Exchange Visitor Program ("SEVP") operated by DHS. (Pl. Ex. 2 (dkt. #3-5) at 2.) The reason given was as follows: "Individual identified in criminal records check and/or has had their VISA revoked." (*Id.*) The email further emphasized: "A termination for this reason does not have a grace period to depart the U.S.," and "[a]ll employment benefits, including on-campus employment and any practical training you may have had

4

authorized, end immediately when a SEVIS record is terminated. Therefore, you no longer have authorization to work in the United States." (*Id.*)

On April 11, 2025, Jane Doe #1 received an email from the United States Department of State, further advising that her F-1 visa had in fact been revoked and that:

> Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or conclude affairs in the United States. Persons being deported may be sent to countries other than their countries of origin.

(Pl. Ex. 3 (dkt. #3-6) at 2.) The email also advised that "[g]iven the gravity of the situation, individuals whose visa was revoked may wish to demonstrate their intent to depart using the CBP Home App[.]" (*Id.*)

Jane Doe #1 acknowledges being arrested in Seattle on January 29, 2021, for fourth degree misdemeanor assault in violation of Wash. Rev. Code § 9A.36.041. However, the district attorney declined to file charges, and no case was ever filed against her. Despite never being charged with a crime and having no other criminal history, Jane Doe #1 received no warning, opportunity to explain or defend herself, or chance to correct any potential misunderstanding before her record was terminated in SEVIS and her F-1 visa was revoked.

As a result of the termination of her SEVIS record, and resulting revocation of her F-1 visa, Jane Doe #1 has been forced to cease her research and relinquish her work laptop, which held data for an "academic poster" due May 22, 2025. She has also been forced to give up work on a paper that she and her advisor planned to submit for a conference in September 2025. She lost her project assistant position, along with her health insurance,

the same day her SEVIS record was terminated. She has also lost her stipend, which she depended on to pay her rent and other bills. She reports that she is only able to sleep for three or four hours a night and wakes in fear that she will be forced to leave the country without the chance to finish her Ph.D. She further fears that she has been falsely marked in the SEVIS database as someone with a criminal record, which will harm her reputation in academic circles and jeopardize her ability to obtain visas for travel, work, or study worldwide. Due to the constant turmoil and stress, she has experienced daily tension headaches in addition to suffering hives.

### B. John Doe #2

Plaintiff John Doe #2 is a graduate student from the People's Republic of China, who is currently enrolled in Master's in Business Analytics program at UW-Madison with an F-1 student visa. He has paid a total of $65,068.00 in tuition and is supposed to graduate on May 31, 2025. After graduation, John Doe #2 hoped to participate in one year of Optional Practical Training ("OPT") related to his area of study. Because his graduate program is a STEM field of study, he is eligible for a 24-month extension of his OPT work authorization.

John Doe #2 discloses that on March 16, 2024, he was charged in Adair County, Missouri, with driving while intoxicated ("DWI"), a class B misdemeanor in violation of Miss. Rev. Stat. § 577.010. On March 18, 2024, John Doe #2 received an email from the United States Consulate in Shenyang, China, advising that his F-1 visa had been revoked. (Pl. Ex. 6 (dkt. #3-9) at 2.) The email further explained:

6

> This action is based on the fact that subsequent to visa issuance, information has come to light indicating that you may be inadmissible to the United States and ineligible to receive a visa, such that you should be required to reappear before a U.S. Consular officer to establish your eligibility for a visa before being permitted to apply for entry to the United States.

(*Id*.) It is unclear whether John Doe #2 reappeared before a consular official for a reassessment of his eligibility,[3] but the record shows that the DWI charges against him were dropped on December 4, 2024, under an "Agreement for Deferred Prosecution."

Nevertheless, on April 8, 2025, John Doe #2 received an email from UW-Madison ISS, stating that his SEVIS record had been terminated by SEVP for the following reason: "Individual identified in criminal records check and/or has had their VISA revoked." (Pl. Ex. 5 (dkt. #3-8) at 3.) The email similarly advised that there was no "grace period to depart the U.S.," and that he could no longer participate in OPT or work. (*Id*.)

Since receiving notice that his SEVIS record was terminated, John Doe #2 has experienced difficulty sleeping, extreme anxiety, and fear for his safety. He fears leaving his apartment because he is worried he will be detained and deported. As a result, he has only left his residence to get groceries.

---

[3] An arrest or conviction for driving under the influence or driving while intoxicated may result in the prudential revocation of a non-immigrant visa on the grounds of possible visa ineligibility for having a physical or mental disorder under INA § 212(a)(1)(A)(iii), codified at 8 U.S.C. § 1182(a)(1)(A), which may result in referral to a panel physician for a medical examination to determine whether this type of ineligibility may apply to the applicant. *See* 22 C.F.R. 41.108(a)(3); 9 FAM 302-2-7(B)(3)(b).

### C. John Doe #3

Plaintiff John Doe #3 is a Ph.D. student from South Korea who has been studying Epidemiology at UW-Madison since September 2022. John Doe #3 has received a total of five F-1 visas. He received his first F-1 visa in 2009, attending Lake Forest Academy for high school in Illinois. From 2012 to 2018, John Doe #3 studied at the University of Indiana in Bloomington, completing an undergraduate degree in statistics. He then enrolled in a graduate program in statistics at the University of Indiana in 2018.

While a graduate student at the University of Indiana in April 2019, John Doe #3 was convicted of operating a vehicle while intoxicated ("OWI") in violation of Indiana Code § 9-30-5-1(a), which is a Class C misdemeanor. He received a 60-day suspended sentence, a fine, and 180 days of supervised probation. He was also ordered to perform 35 hours of community service. He paid the fine, finished his probation, and completed the 35 hours of community service. Although his F-1 status was revoked following the conviction, he quickly reapplied *and* was granted another F-1 visa, which allowed him to return to the University of Indiana in September 2019, and finish his master's degree in 2020. He has received several speeding tickets, but other than citations for operating without proof of insurance and operating with a defective speedometer, he has never been convicted of any other crime, much less a violent crime.

At the beginning of the COVID-19 pandemic in 2020, John Doe #3 returned to Korea. He reentered the United States on another F-1 visa on September 1, 2022, to begin the doctoral program in Epidemiology at UW-Madison. He has been researching how changes in the body, such as Body Mass Index ("BMI"), affect the progression of

obstructive sleep apnea over time. For the past two years, he has served as a teaching assistant for two biostatistics courses that are required for all first-year graduate students in the program. His anticipated graduation date is in May 2027, after which he hopes to continue in academia as a professor.

However, on April 8, 2025, John Doe #3 received an email from UW-Madison ISS, stating that his SEVIS record had been terminated by SEVP for the following reason: "Individual identified in criminal records check and/or has had their VISA revoked." (Pl. Ex. 8 (dkt. #3-11) at 2.) As with the other plaintiffs, John Doe #3 was told that there was no "grace period to depart" and that all employment benefits, including on-campus employment, ended immediately when his SEVIS record was terminated. (*Id*.)

The following day, April 9, 2025, John Doe #3 received an email from the State Department, advising that his F-1 visa had been revoked. (Pl. Ex. 9 (dkt. #3-12) at 2.) Similar to the email received by plaintiff Jane Doe #1, he was warned that he could face detention and then deported without the opportunity to secure his possessions or conclude his affairs in the United States, threatening in addition that "Persons being deported may be sent to countries other than their countries of origin." (*Id*.)

Since receiving notice that his SEVIS record was terminated, John Doe #3 reports having difficulty sleeping and feeling stressed when seeing other students being detained. He is constantly worried and anxious that he too will be detained and forced to leave the country. He avoids going outside and further worries he will have to abandon his degree program.

OPINION

To the extent applicable, plaintiffs do not challenge the revocation of their F-1 visas in this lawsuit, but rather seek reinstatement of their student status in SEVIS. (Dkt. #3-1, at 7 n.7.) Plaintiffs seek declaratory and injunctive relief on the following counts: (1) violation of the APA, 5 U.S.C. § 706(2)(A), because the agency action failed to articulate the facts that formed a basis for their decision, which was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; (2) violation of the Fifth Amendment right to due process because plaintiffs were not afforded any notice or opportunity to be heard before their SEVIS records were terminated; (3) violation of the APA, 5 U.S.C. § 706(2)(B), by terminating their SEVIS records and status on improper grounds without prior notice and an opportunity to be heard in violation of the Fifth Amendment right to due process; (4) violation of the APA, 5 U.S.C. § 706(2)(D), by failing to observe agency rules and procedures required by law; and (5) violation of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (an "*Accardi* Claim"), as a result of the defendants' failure to follow their own rules and procedures when they terminated plaintiffs' SEVIS records on improper grounds. (Dkt. #1, at ¶¶ 57-84.)

Plaintiffs contend that defendants terminated their SEVIS records and their F-1 student status unlawfully in violation of the APA and the right to due process because they maintained their courses of study and have not engaged in any specified activity defined in 8 C.F.R. § 214.1(e)-(g). Plaintiffs note that under ICE's own policy guidance, the revocation of an F-1 student visa does not provide a basis to terminate F-1 student status

in SEVIS.[4]  "Instead, if the visa is revoked, the student is permitted to continue to pursue their course of study in school, but upon departure from the United States, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning." *Jane Doe 1 et al. v. Bondi et al.*, No. 1:25-cv-1998-VMC (N.D. Ga. Apr. 18, 2025) (citing Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016)) (Pl. Ex. 10 (dkt. #3-13) at 61.)  In other words, the F-1 student visa, which refers only to the document that nonimmigrant students receive to enter the United States, and F-1 student status, which refers to the students' formal immigration classification once they have entered the country, are not the same thing. *Id*. Thus, while revocation of an F-1 visa may preclude re-entry to the United States, it does not preclude a student from remaining in the United States and continuing their course of study while they maintain status. *See Jie Fang*, 935 F.3d at 175-76 (discussing the F-1 visa program, the requirements for maintaining F-1 student "status," and the regulations that permit termination of a student's "F-1 visa status").

Plaintiffs move for a temporary restraining order on the grounds that defendants have unlawfully terminated their SEVIS records and their F-1 student status without any valid basis.  (Dkt. #3-1, at 3.)  The standard for determining whether a temporary restraining order or preliminary injunction is appropriate is the same. *See Planned Parenthood of Wis., Inc. v. Van Hollen*, 963 F. Supp. 2d 858, 865 (W.D. Wis. 2013) (citing *Winnig v. Sellen*, 731 F. Supp. 2d 855, 857 (W.D. Wis. 2010)).  "As a threshold matter, a party

---

[4] ICE Policy Guidance 1004-04 – Visa Revocations (June 7, 2010), available at https://www.ice.gov/doclib//sevis/pdf/visa_revocations_1004_04.pdf (last visited Apr. 25, 2025) ("Visa revocation is not, in itself, a cause for termination of the student's SEVIS record.").

11

seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied." *International Ass'n of Fire Fighters, Local 365 v. City of East Chicago*, 56 F.4th 437, 446 (7th Cir. 2022) (quoting *Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021)). If the movant makes this showing, the district court must then consider two additional factors: "the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied" and "the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id*. Consistent with the court's oral ruling during today's telephonic hearing with parties' counsel, as well as the reasons further memorialized below, the court again enters in writing the temporary restraining order granted orally and set forth below.

### A. Reasonable Likelihood of Success

As detailed above, plaintiff Jane Doe #1's SEVIS record appears to have been terminated because of an arrest for fourth degree misdemeanor assault, which never resulted in criminal charges. John Doe #2 was charged with misdemeanor DWI, but those charges were also dropped pursuant to an Agreement for Deferred Prosecution. As noted above, a non-immigrant visa-holder such as an F-1 international student fails to maintain status, and their visa may be terminated after *conviction* of a "crime of violence for which a sentence of more than one year imprisonment may be imposed (regardless of whether such sentence is in fact imposed)." 8 C.F.R. § 214.1(g). Because neither Jane Doe #1 nor John

Doe #2 incurred a conviction of any kind, much less for a felony crime of violence,[5] there appears to be no valid basis for DHS to terminate their SEVIS records.

Apart from speeding tickets and other minor citations, John Doe #3 was convicted of Class C misdemeanor OWI in Indiana and received a probated sentence of 60 days, a fine, community service and supervised probation for 180 days. However, a person who commits a Class C misdemeanor in Indiana faces a fine and a term of imprisonment of not more than 60 days. Ind. Code § 35-50-3-4. Thus, this conviction also fails to qualify as a basis for terminating a SEVIS record under 8 C.F.R. § 214.1(g) as either a crime of violence or an offense that could result in a sentence of more than one year.

Accordingly, all three plaintiffs have shown a substantial likelihood of success on the merits of their claim that defendants violated the APA by summarily terminating their F-1 student status in SEVIS without cause. Specifically, based on the record currently before the court, plaintiffs are likely to show that ICE's termination of their F-1 student status was not in compliance with their own procedures found in 8 C.F.R. § 214.1(d) in violation of 5 U.S.C. § 706(2)(D), *and* was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A). *See Isserdasani, v. Noem*, No. 25-cv-00283-WMC, 2025 WL 1118626, at *5 (W.D. Wis. Apr. 15, 2025) ("Specifically, based on the record currently before the court, Isserdasani is likely to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in

---

[5] *See Leocal v. Ashcroft*, 543 U.S. 1, 9-10 (2004) (holding that a conviction for driving under the influence is not a "crime of violence").

accordance with law under 5 U.S.C. § 706(2)(A)."); *see also Chen v. Noem*, 1:25-cv-733-TWP-MB, 2025 WL 1163653, at *10 (S.D. Ind. Apr. 21, 2025) (finding that plaintiff established a likelihood of success on the merits of an APA claim showing that defendants' termination of his SEVIS record was not in compliance with 8 C.F.R. § 214(d) and was "arbitrary, capricious, an abuse of discretion, and not in accordance with law under 5 U.S.C. § 706(2)(A)"); *John Roe, et al. v. Noem*, No. 25-cv-40, 2025 WL 1114694, at *3 (D. Mont. Apr. 15, 2025) ("Therefore, the Court finds that Plaintiffs are likely to succeed on the allegation that Defendants' termination of Plaintiffs' F-1 student status under the SEVIS is arbitrary and capricious, an abuse of discretion, contrary to [a] constitutional right, contrary to law, and in excess of statutory jurisdiction."); *Liu v. Noem*, No. 1:25-cv-00133-SE, Dkt. No. 13 at 3 (D.N.H. Apr. 10, 2025) ("Based on the record before the court, Liu is likely to show that DHS's termination of his F-1 student status was not in compliance with 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.").

B.  **Irreparable Harm and Adequacy of Remedy at Law**

Plaintiffs also face devastating irreparable harm due to the termination of their SEVIS records and F-1 student status, which will prevent John Doe #2 from completing his graduate degree just one month from his expected graduation and will prevent Jane Doe #1 and John Doe #3 from continuing doctoral programs, including their positions as a research assistant and a teaching assistant, respectively. As multiple courts facing similar motions to enjoin the termination of students' F-1 status have recognized, the loss of timely academic progress alone is sufficient to establish irreparable harm. *Doe v. Noem*, No. 3:25-

cv-00023, 2025 WL 1161386, at *6 (W.D. Va. Apr. 21, 2025) (citing *Isserdasani*, 2025 WL 1118626, at *5; and *Liu*, No. 25-cv-133-SE, Dkt. No. 13 at 4); *see also Doe v. Noem*, No. 2:25-cv-00633, 2025 WL 1141279, at *8 (W.D. Wash. Apr. 17, 2025) (collecting cases holding that interruption of educational programs or progress, including loss of opportunity to participate in post-graduate education programs, can be irreparable harm). Additionally, all three plaintiffs credibly report suffering enormous stress from being unable to complete their degree programs, much less leave their residences for fear of arrest, detention, and deportation. Therefore, the court concludes that they have adequately demonstrated the possibility of irreparable harm for which no adequate remedy at law will exist without entry of a TRO. *See Jie Fang*, 935 F.3d at 183-85.

## C. Balancing Analysis

Where a plaintiff satisfies the threshold requirement for a preliminary injunction, courts weigh "the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted." *K.C. v. Individual Members of the Medical Licensing Bd. of Indiana*, 121 F.4th 604, 632 (7th Cir. 2024) (citations and internal quotation marks omitted). "This is a sliding scale -- the more likely [the moving party] is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Id*. at 633 (alteration in original). Part of this balancing process includes evaluating the public interest and the effects the preliminary injunction -- and its denial -- would have on nonparties. *Id.*

15

For reasons set forth above, plaintiffs have demonstrated a reasonable likelihood of success on their claim that defendants wrongly terminated their SEVIS records and F-1 student status in violation of agency regulations. Moreover, the marginal harm, if any, to defendants does not begin to equate with the likely harm to plaintiffs. In addition, the public, which includes the taxpayers of the State of Wisconsin, has an overriding interest in seeing that students at the University of Wisconsin are able to be educated and obtain degrees earned with both sweat equity and tuition payments, unless there is a *good reason* to deny either. This is a contract between the State of Wisconsin and its students. So far, defendants have offered nothing to suggest that plaintiff John Doe #2 is undeserving of a degree after years of effort and payment of tuition, or that any of the plaintiffs should be prevented from pursuing degree programs, much less deported from the United States.

Accordingly, the court concludes that all relevant factors favor plaintiffs.

ORDER

IT IS ORDERED that:

1) Plaintiffs' motion for a temporary restraining order (dkt. #3) is GRANTED as set forth below.

2) Pending a preliminary injunction hearing, defendants (1) shall restore each plaintiff's F-1 student record in the Student and Exchange Visitor System ("SEVIS") and are enjoined from terminating those records; (2) are enjoined from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of the decision to terminate their SEVIS records, including detaining or transferring any plaintiff out of this court's jurisdiction, or ordering the detention or transfer of any plaintiff out of this court's jurisdiction; and (3) are prohibited from initiating removal proceedings against or deporting any plaintiff on the basis of the termination of their F-1 student record.

3) The court will hold a preliminary injunction hearing at 12:00 p.m. on Wednesday May 21, 2025.

4) Plaintiff shall file proposed findings of fact consistent with the court's procedures for preliminary injunctions by Friday May 9, 2025.  Defendants may file under the same procedures by Friday May 16, 2025.

Entered this 25th day of April, 2025.

                        BY THE COURT:

                        /s/

                        _____
                        WILLIAM M. CONLEY
                        District Judge