IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JANE DOE #1 and
JOHN DOE #2,

                Plaintiffs,

  v.

KRISTI NOEM, in her official capacity as
Secretary of the Department of Homeland Security,
the U.S. DEPARTMENT OF HOMELAND SECURITY, and
TODD LYONS, in his official capacity as Acting
Director of U.S. Immigration and Customs
Enforcement,

              Defendants.

OPINION AND ORDER

25-cv-317-wmc

Plaintiffs Jane Doe #1 and John Doe #2 filed a complaint for declaratory and injunctive relief against defendants Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security, the U.S. Department of Homeland Security ("DHS"), and Todd Lyons, in his official capacity as Acting Director of U.S. Immigration and Customs Enforcement ("ICE"), alleging that DHS and ICE unlawfully terminated records of their F-1 student visa status in the Student and Exchange Visitor System ("SEVIS") in violation of both their rights to due process and the Administrative Procedure Act ("APA").[1]  Further, they describe this action:  (1) affected their standing as graduate students at the University of Wisconsin-Madison, as well their eligibility for on-campus employment and opportunities for a practical training position following graduation; and

---

[1] A third plaintiff, John Doe #3, recently entered into a stipulation with defendants to dismiss his claims with prejudice.  (Dkt. #31.)  Accordingly, the case is now proceeding with only two Doe plaintiffs previously granted leave to proceed using pseudonyms and the case caption has been altered as shown above. (Dkt. #16.)

(2) placed them in jeopardy of possible detention and accelerated deportation without notice or opportunity to be heard, even to a country other than their own.

After a telephonic hearing with counsel for all parties, the court granted plaintiffs' emergency motion for a temporary restraining order on April 25, 2025, and held a preliminary injunction hearing on May 21, 2025. (Dkt. #18.) Having found a strong likelihood of success on plaintiffs' claim that defendants' termination of their F-1 student status in SEVIS was not in compliance with applicable regulations, was arbitrary and capricious, and otherwise not in accordance with law under 5 U.S.C. § 706(2)(A), as well as reasonably likely to result in ongoing, irreparable harm to plaintiffs absent preliminary relief, the court granted plaintiffs' request for a preliminary injunction and elaborates on its reasons for doing so below.

BACKGROUND[2]

**A. Non-Immigrant F-1 Visa Status**

Under the Immigration and Nationality Act ("INA") and its implementing regulations, international students may be admitted to the United States with a non-immigrant F-1 visa to pursue a full course of study at an approved academic institution. 8 U.S.C. § 1101(a)(15)(F)(i). Once a student enters the United States with an F-1 visa, the student is granted F-1 student status and permitted to remain in the United States for the duration of that status as long as the student continues to meet the requirements

---

[2] Unless otherwise indicated, the following facts are taken from the defendants' response to plaintiff's proposed facts (dkt. #27), plaintiffs' declarations, and the parties' undisputed representations during the preliminary injunction hearing.

established by the regulations governing the student's visa classification in 8 C.F.R. § 214.2(f).

To be admitted under F-1 status, an applicant must present a Form I-20 issued by a school certified by DHS's Student Exchange Visitor Program ("SEVP"). 8 C.F.R. § 214.2(f)(1). SEVP is expressly directed to "collect" information regarding students with F-1 status by DHS, which is authorized to "establish an electronic means to monitor and verify" certain information about international students as needed. 8 U.S.C. § 1372. In turn, SEVIS is the centralized database that SEVP uses to monitor students with F-1 visa status and U.S. colleges and universities utilize to assure that their international students are maintaining their F-1 status.[3] In order for a school to be certified by SEVP, the school must have designated school officials ("DSOs"), who are responsible for assisting and overseeing enrolled students holding F-1 student visas. *Kim v. Holder*, 737 F.3d 1181, 1182 n.2 (7th Cir. 2013). DSOs must also update and maintain student records in SEVIS to reflect whether they maintain their F-1 status. *Id.*; *see also* 8 C.F.R. § 214.3(g) (outlining recordkeeping and reporting requirements for DSOs at certified schools).

An international student with valid F-1 status is granted permission to stay in the United States as long as they continue to meet the requirements of their visa classification by maintaining a full course of study or engaging in "authorized practical training following the completion of studies." 8 C.F.R. § 214.2(f)(5)(i). Once a student has completed their course of study and any authorized practical training, they generally have 60 days to either

---

[3] *See About SEVIS*, Dep't of Homeland Security, https://studyinthestates.dhs.gov/site/about-sevis (last visited May 21, 2025).

depart the United States or transfer to another approved academic institution.  8 C.F.R. § 214.2(f)(5)(iv).

In addition, non-immigrant visa-holders (including students with F-1 student visas) must refrain from certain specified activity to maintain their lawful status, such as engaging in unauthorized employment, providing false information to DHS, or engaging in "criminal activity."  8 C.F.R. § 214.1(e)-(g).  For purposes of maintaining status, criminal activity is narrowly defined as a "conviction . . . for a crime of violence for which a sentence of more than one year imprisonment may be imposed [*i.e.*, a felony offense] (regardless of whether such sentence is in fact imposed)."  8 C.F.R. § 214.1(g).   In the absence of a student's conduct causing a status violation, a student's F-1 status can only be terminated under three circumstances: (1) a previously-granted waiver under 8 U.S.C. § 1182(d)(3) or (4) is revoked; (2) a private bill to confer lawful permanent residence is introduced in Congress; or (3) notification published in the Federal Register identifying national security, diplomatic, or public safety reasons for termination.  8 C.F.R. § 214.1(d).  Further, an international student who "fail[s] to maintain the nonimmigrant status in which [he] was admitted" is subject to removal from the United States.  8 U.S.C. § 1227(a)(1)(C)(i).

Thus, a student who "fails to maintain a full course of study" without approval from a DSO, or otherwise "fails to maintain status," must leave the country immediately or seek reinstatement of their status.  8 C.F.R. § 214.2(f)(5)(iv).  Reinstatement is discretionary, and if denied, the student may not appeal the decision.  8 C.F.R. 214.2(f)(16)(ii); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 176 (3d Cir. 2019).

4

## B. Plaintiffs' Individual Status

### 1. Jane Doe #1

Plaintiff Jane Doe #1 is a Ph.D. student from the People's Republic of China, who has been enrolled in a doctoral program in Information Science at the University of Wisconsin-Madison ("UW-Madison") with an F-1 student visa since December 2024. As an essential part of her doctoral program, Jane Doe #1 worked as a project assistant to her advisor's ongoing research project and received a stipend. She anticipates graduating in May 2029.

On April 8, 2025, Jane Doe #1 received an email from UW-Madison's International Student Services ("ISS") stating that her SEVIS record had been terminated by the SEVP. (Pl. Ex. 2 (dkt. #3-5) at 2.) The reason given was as follows: "Individual identified in criminal records check and/or has had their VISA revoked." (*Id.*) The email further emphasized: "A termination for this reason does not have a grace period to depart the U.S.," and "[a]ll employment benefits, including on-campus employment and any practical training you may have had authorized, end immediately when a SEVIS record is terminated. Therefore, you no longer have authorization to work in the United States." (*Id.*)

On April 11, 2025, Jane Doe #1 also received an email from the United States Department of State advising that her F-1 visa had in fact been revoked and warning her that:

> Remaining in the United States without a lawful immigration status can result in fines, detention, and/or deportation. It may also make you ineligible for a future U.S. visa. Please note that deportation can take place at a time that does not allow the person being deported to secure possessions or

5

conclude affairs in the United States.  Persons being deported may be sent to countries other than their countries of origin.

(Pl. Ex. 3 (dkt. #3-6) at 2.)  The email also advised that "[g]iven the gravity of the situation, individuals whose visa was revoked may wish to demonstrate their intent to depart using the CBP Home App[.]"  (*Id*.)

Defendants acknowledge that Jane Doe #1's SEVIS record was terminated based on a hit in the National Criminal Information Center ("NCIC") database regarding an arrest in Seattle on January 29, 2021, for fourth degree misdemeanor assault in violation of Wash. Rev. Code § 9A.36.041.  (Dkt. #25, at 11.)  It is further undisputed, however, that the local district attorney declined to file charges at that time, and no case has *ever* been filed against Jane Doe #1.  Despite never being charged with any crime, much less a violent felony, and having no other criminal history, Jane Doe #1 received no warning, no opportunity to explain or defend herself, or chance to correct any potential misunderstanding before her F-1 student status was terminated in SEVIS.

As a result of the termination of her SEVIS record, and resulting loss of her F-1 student visa itself, Jane Doe #1 was forced to cease her research at the UW and relinquish her work laptop, which held data for an "academic poster" due on May 22, 2025.  She was also forced to give up work on a paper that she and her advisor planned to submit for a conference in September 2025.  She similarly lost her project assistant position, along with her health insurance, on the same day her SEVIS record was terminated.  She further lost her stipend, which she depended on to pay rent and other bills.  The experience caused her considerable stress, sleeplessness, and fear, resulting in daily tension headaches in addition to suffering hives.

### 2. John Doe #2

At the time the complaint was filed, plaintiff John Doe #2, was a graduate student at UW-Madison from the People's Republic of China with an F-1 student visa. After paying a total of $65,068.00 in tuition, he was set to graduate in May 2025 with a master's degree in business analytics, which he was able to do because of this court's entry of a TRO. After graduation, John Doe #2 plans to participate in one year of Optional Practical Training ("OPT") related to his area of study. Because his graduate degree is from a STEM field of study, he is also eligible for a 24-month extension of his OPT work authorization with a valid F-1 student visa status.

Defendants acknowledge that John Doe #2's SEVIS record was terminated because of an NCIC record of his arrest on March 16, 2024, in Adair County, Missouri, for driving while intoxicated ("DWI"), which is a class B misdemeanor under Miss. Rev. Stat. § 577.010. (Dkt. #25, at 11.) It is undisputed, however, that the DWI charge against him was also dropped on December 4, 2024, under an "Agreement for Deferred Prosecution."

Nevertheless, on April 8, 2025, John Doe #2 received an email from UW-Madison ISS, stating that his SEVIS record had been terminated by SEVP for the following reason: "Individual identified in criminal records check and/or has had their VISA revoked." (Pl. Ex. 5 (dkt. #3-8) at 3.) The email similarly advised that there was no "grace period to depart the U.S.," and that he could no longer participate in OPT or work. (*Id*.) After receiving this notice, John Doe #2 reported experiencing difficulty sleeping, extreme anxiety, and such fear for his safety that he left his apartment only to get groceries.

## C. Procedural Posture

Fearing that they might be arrested, detained, and summarily deported without completing their academic studies or engaging in planned post-graduate OPT as authorized with F-1 student visa status, plaintiffs filed their complaint for declaratory and injunctive relief, asserting the following claims against defendants: (1) violation of the APA, 5 U.S.C. § 706(2)(A), by failing to articulate the facts that formed a basis for their decision, which was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; (2) violation of their Fifth Amendment rights to due process because plaintiffs were not afforded any notice or opportunity to be heard before their SEVIS records were terminated; (3) violation of the APA, 5 U.S.C. § 706(2)(B), by terminating their SEVIS records on improper grounds without prior notice and an opportunity to be heard in violation of the Fifth Amendment right to due process; (4) violation of the APA, 5 U.S.C. § 706(2)(D), by failing to observe agency rules and procedures required by law; and (5) violation of *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (an "*Accardi* Claim"), as a result of the defendants' failure to follow their own rules and procedures when they terminated plaintiffs' SEVIS records on improper grounds. (Dkt. #1, at ¶¶ 57-84.)

After a hearing with counsel for both parties on April 25, 2025, the court orally granted plaintiffs' emergency motion for a temporary restraining order and issued a written opinion and order, confirming that ruling. (Dkt. #18.) In that opinion and order, the court found plaintiffs had shown "a substantial likelihood of success on the merits of their claim that defendants violated the APA by summarily terminating their F-1 student status in SEVIS without cause." (Dkt. #18, at 13.) Specifically, the court found that plaintiffs were "likely to show that [defendants'] termination of their F-1 student status was not in

compliance with their own procedures found in 8 C.F.R. § 214.1(d) and was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under 5 U.S.C. § 706(2)(A)." (*Id*.) Concluding that the balance of all other relevant factors favored plaintiffs, the court then temporarily restrained defendants from terminating their SEVIS records or taking any other action, directly or indirectly, resulting in legal consequences as the result of the decision to terminate their SEVIS records, including detaining or transferring any plaintiff out of this court's jurisdiction. (*Id*. at 16.)

After the TRO was entered on April 25, plaintiffs' SEVIS records were reactivated as instructed by the court. Jane Doe #1 has resumed her doctoral program and has regained her project assistant position. (May 21, 2025 Hearing Trans. at 7.) John Doe #2 was allowed to graduate and has further applied for OPT, in which he is also authorized to engage for purposes of obtaining work experience related to his field with valid F-1 status. (*Id*. at 6.) Even so, their F-1 visas remain revoked and face a real risk of denial of reentry were they to leave the country for any reason. (*Id*. at 3.)

On April 26, 2025, ICE issued a "Broadcast Message" to "[a]ll SEVP Personnel," announcing a new policy regarding termination of SEVIS records. The new policy includes a non-exhaustive list of ten reasons that SEVP can use to terminate SEVIS records. (Dkt. #19-12, at 2.) Although the policy does not expressly mention criminal activity, it states that SEVIS records may be terminated based on "objective evidence that a nonimmigrant visa holder is no longer complying with the terms of their nonimmigrant status for any reason[.]" (*Id*. at 3.) In addition, SEVP reiterated the risk of the termination of a nonimmigrant's SEVIS record based on a visa revocation "with immediate effect" by the

9

State Department, in which case "ICE should take steps to initiate removal proceedings."

(*Id.*)

Defendants filed a response to plaintiffs' motion for a preliminary injunction, arguing that plaintiffs have no chance of success on any of their claims. (Dkt. #25.) In support, defendants offered a generic declaration from Andre Watson, who serves as Assistant Director of the National Security Division for Homeland Security Investigations. (Watson Decl. (dkt. #26) ¶ 1.) That declaration, which is not specific to the plaintiffs' circumstances, states in part as follows:

> 4. Beginning in March of 2025, ICE reviewed and terminated numerous SEVIS records due to information provided by U.S. Department of State and criminal databases.
>
> 5. ICE has re-activated SEVIS records for plaintiff(s) who met the parameters above.
>
> 6. ICE has no plans under its new SEVIS policy to re-terminate the plaintiff(s) SEVIS record based solely on the NCIC record that led to its initial termination.
>
> 7. ICE's reactivation of the plaintiff(s) SEVIS record is being made retroactive to the date of its initial termination such that there is no gap in the plaintiff(s)' SEVIS record.
>
> 8. For plaintiff(s) who were or are currently engaged in Optional Practical Training (OPT) where SEVP also edited the SEVIS record to change the OPT employment authorization end date, the record had been reset to the end date set forth in the alien's SEVIS record before its termination.

(*Id.* at ¶¶ 4-8.) Watson elaborated during a hearing in a similar case pending in the United States District Court for the District of Columbia that thousands of SEVIS record terminations were the result of a "student criminal alien initiative" in which DHS leadership directed employees to run all 1.3 million noncitizen students in this country

through NCIC in a process that ultimately resulted in thousands of SEVIS record terminations and revoked visas without any individualized review. *See Student Doe #1 v. Noem*, No. 25-cv-2998, 2025 WL 1348503, at *10 (D.N.J. May 8, 2025) (summarizing Watson's testimony on April 29, 2025, in *Patel v. Lyons*, 1:25-cv-1096 (D.D.C. Apr. 29, 2025)).

At the preliminary injunction hearing held by this court on May 21, 2025, defendants admitted that plaintiffs' SEVIS records were terminated because of hits in the NCIC database and that plaintiffs' F-1 student visas have been "prudentially revoked." (May 21, 2025 Hearing Trans. at 3.)  Defendants did not call any witnesses or present evidence even hinting at a valid basis to terminate plaintiffs' F-1 visa records in SEVIS. Despite this, defendants conceded that plaintiffs cannot go home without risking a denial of readmission, thereby losing the ability to continue their course of study or authorized practical training.  (*Id*. at 3-5.)

Turning to the pending motion, defendants argue that the Watson declaration outlining the new April 26 policy supports a finding that further injunctive relief is not warranted, since plaintiffs have received the relief sought:  reinstatement of their SEVIS records retroactive to the date of termination.  (May 21, 2025 Hearing Trans. at 7-8, 15.) According to defendants, many F-1 student plaintiffs have agreed to dismiss their claims in reliance upon the stipulation made in Watson's declaration that there were "no plans" to re-terminate their SEVIS records.  (*Id*. at 10-11; Dkt. #25, at 16-17.)  Once again, however, defendants offered no justification for terminating the plaintiffs' SEVIS records in the first place, including based on hits in the NCIC database (for Jane Doe #1's assault arrest and John Doe #2's driving-while-intoxicated charge), both of which were dropped

and never prosecuted. Defendants further do not dispute that neither prosecution would have qualified as a violent felony, much less a "conviction" that could affect plaintiffs' status under the governing regulations found in 8 U.S.C. § 214.1(g).

Meanwhile, plaintiffs countered that the harm caused by defendants' prior actions was continuing notwithstanding the new policy, and that the need for a preliminary injunction remained. In particular, plaintiffs offered a declaration from James Hicks, the Division Chief of External Operations at the SEVP within Homeland Security Investigations, which had been provided as an exhibit in another F-1 student SEVIS record case. (Hicks Decl. (Ex. C to dkt. #30) ¶ 1.) Due to technical limitations within the SEVIS database itself, Hicks indicates that the "event history for a given record cannot be deleted from the system." (*Id*.) According to Hicks, while SEVP added a notation to each F-1 student's visa record indicating that the student's status had been restored retroactively to the original date of the termination, these notations are *not* viewable to end-users outside of SEVP, such as DSOs or their academic institutions. (*Id*. at ¶ 4).

Plaintiffs argued that because the notations showing that their SEVIS records were terminated -- despite the fact that they had not been convicted of a violent felony or otherwise done anything to jeopardize their status -- could not be viewed by other agencies, such as United States Citizenship and Immigration Services ("USCIS"), Customs and Border Protection ("CBP"), and the Department of State specifically, meaning that plaintiffs must now encounter these agencies in the future without knowing how they are going to treat this gap. (May 21, 2025 Hearing Trans. at 16.) Plaintiffs also reiterated the considerable stress caused by defendants' actions, which through no fault of their own has cast a shadow of uncertainty over their status, academic pursuits and related work in this

country.  (*Id*.)  While defendants also represented that they were in the process of providing plaintiffs with a letter regarding the retroactive effect of their SEVIS reinstatement, this has yet to be done.  (*Id*. at 13.)  On this basis, the court found defendants' arguments unpersuasive and further found that plaintiffs had once again made a strong showing that they were likely to succeed on the merits and continue to face a real risk of irreparable harm.  Therefore, the court orally granted plaintiffs' motion for a preliminary injunction, pending this written opinion memorializing the reasons for entry of that injunction.

## OPINION

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008).  "As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has 'no adequate remedy at law' and will suffer 'irreparable harm' if preliminary relief is denied."  *International Ass'n of Fire Fighters, Local 365 v. City of East Chicago*, 56 F.4th 437, 446 (7th Cir. 2022) (quoting *Cassell v. Snyders*, 990 F.3d 539, 544-45 (7th Cir. 2021)).  The showing of likelihood of success on the merits must be "strong," which "normally includes a demonstration of how the applicant proposes to prove the key elements of its case."  *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020).  If the movant makes this showing, the district court must then consider two additional factors: "the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied" and "the

13

public interest, meaning the consequences of granting or denying the injunction to non-parties." *Id*.

## I. Likelihood of Success on the Merits

The parties devote the bulk of their briefing on plaintiffs' likelihood of success on the merits of their claims under the APA, which "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Dep't of Homeland Sec. v. Regents of Univ. of Cal*., 591 U.S. 1, 16 (2020) (internal quotation marks and citation omitted). The APA waives federal sovereign immunity in some circumstances to allow for equitable relief from agency action or inaction. 5 U.S.C. § 702. Specifically, under the APA, a court may "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or is "in excess of statutory jurisdiction, authority, or limitations or short of statutory right," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C),(D).

Here, plaintiffs have presented evidence that they maintained their lawful F-1 visa status by pursuing a full course of study and have not engaged in *any* activity that would jeopardize that status. As discussed above, 8 C.F.R. § 214.1(d) sets forth only three, specific circumstances under which DHS can terminate a nonimmigrant F-1 student's status. It is undisputed that none of those circumstances justifying DHS's termination of either plaintiffs' F-1 student status occurred. In particular, defendants now concede that plaintiffs' SEVIS records had been terminated based on NCIC records of subsequently dropped, non-violent, misdemeanor charges that came nowhere close to the criteria for

14

criminal activity found in 8 C.F.R. § 214.1(g), and have offered *no* argument that doing so was lawful.  Defendants also have offered *no* other reason set forth in 8 C.F.R. § 214.1(d) (or otherwise) that might have justified the termination of plaintiffs' SEVIS records, and that it was done without notice, opportunity to be heard, or right of appeal.

Based on this record, plaintiffs have made a strong showing that defendants summarily terminated their SEVIS records and effectively their F-1 status without cause, individualized consideration, or adequate explanation.  At a minimum, plaintiffs have offered compelling evidence that defendants did not comply with 8 C.F.R. § 214.1(d) in terminating their SEVIS records and that doing so was arbitrary, capricious, an abuse of discretion, and not in accordance with the law under 5 U.S.C. § 706(2)(A).  *See Isserdasani v. Noem*, No. 25-cv-283-wmc, 2025 WL 1330188, at *4 (W.D. Wis. May 7, 2025).  Many other courts have reached the same conclusion in similar lawsuits across the country brought by F-1 student visa holders whose SEVIS records were abruptly terminated without cause since March 2025, when ICE began terminating those records based on information provided by the State Department and criminal databases without individualized consideration or an explanation of a valid reason for termination.  *E.g., Liu v. Noem*, No. 25-cv-133, 2025 WL 1233892, at *9-10 (D.N.H. Apr. 29, 2025); *Parra Rodriguez v. Noem*, No. 25-cv-616, 2025 WL 1284722, at *8 (D. Conn. May 1, 2025); *Madan B.K. v. Noem*, No. 1:25-cv-419, 2025 WL 1318417, at *7 (W.D. Mich. May 7, 2025); *Vyas v. Noem*, No. 3:25-0261, 2025 WL 1351537, at *9 (S.D. W. Va. May 8, 2025); *Student Doe No. #1 v. Noem*, No. 25-cv-2998, 2025 WL 1348503, at *8-10 (D.N.J. May 8, 2025); *Student Doe #1 v. Trump*, No. 25 C 4188, 2025 WL 1341711, at *12 (N.D. Ill. May 8, 2025); *Ortega Gonzalez v. Noem*, No. 6:25-cv-622, 6:25-cv-0632, 2025 WL

15

1355272, at *5 (D. Ore. May 9, 2025); *Ajugwe v. Noem*, No. 8:25-cv-982, 2025 WL 1370212, at *9 (M.D. Fla. May 12, 2025); *John Roe v. Noem*, No. CV 25-40, 2025 WL 1382930, at *7 (D. Mont. May 13, 2025); *John Doe v. Noem*, No. 3:25-23, 2025 WL 1399216, at *11 (W.D. Va. May 14, 2025); *Saxena v. Noem*, No. 5:25-cv-5035, 2025 WL 1413266, at *7 (D.S.D. May 15, 2025); *Student 1 v Noem*, No. 25-2871, 2025 WL 1431186, at *9 (D.N.J. May 19, 2025); *see also Kumar v. Noem*, No. 3:25-cv-42, op. at 19 (S.D. Iowa May 15, 2025) (Ex. A to Dkt. #30); *Doe v. Trump*, No. 25-cv-3140, 2025 WL 1467543, at *9 (N.D. Cal. May 22, 2025) (entering a nationwide injunction)

Nevertheless, defendants continue to press several, technical arguments that this court and others have roundly rejected:  (1) the termination of SEVIS records has no impact on a foreign student's F-1 status; (2) review under the APA is barred by the Privacy Act; and (3) the termination of SEVIS records is not a "final" agency action.  None of these arguments are any more compelling now than they were when previously rejected for reasons set forth briefly below.

### A. SEVIS Records and F-1 Status

Defendants contend that terminating a foreign student's SEVIS record does not affect the student's F-1 status.  This court and others have rejected the argument by defendants that a student's SEVIS record is somehow meaningless.  *See Isserdasani*, 2025 WL 1330188, at *6 ("defendant's argument that changing a student's SEVIS record to 'terminated' does not also have the effect of terminating their status is 'semantics'"); *see also Liu*, 2025 WL 1233892, at *5-7 ("The evidence in the record at this stage of the litigation leads to only one conclusion.  DHS terminated [plaintiff's] F-1 student status

16

when it terminated his record in SEVIS."); *Student Doe #1*, 2025 WL 1341711, at *10 (rejecting defendants' argument and noting that "[t]he State Department, DHS, and sponsoring schools all follow the agencies' guiding sources and consider the termination of a student's SEVIS record equivalent to the termination of that student's F-1 status").

Guidance from the U.S. Department of State similarly supports the conclusion that each students' SEVIS record *is* intended to reflect that student's actual status to the DSOs responsible to determine whether he or she may continue to matriculate, perform work study or participate in a subsequent OPT program.  Specifically, the Foreign Affairs Manual, an "authoritative source" for State Department policies and procedures that govern "the operations of the State Department, the Foreign Service and, when applicable, other federal agencies" -- states that "the SEVIS record is the *definitive* record of student or exchange visitor *status* and visa eligibility."  9 F.A.M. 402.5-4(B) (emphasis added).[4] Defendants' claim that termination of a student's SEVIS record does not affect F-1 visa status is further contradicted by the new April 26 policy, which states that a SEVIS record may be unilaterally terminated due to the revocation of a F-1 visa, leading directly to removal.  (Dkt. #19-2, at 3.)  And there is now overwhelming evidence from cases across the country that DSOs did just that in response to a terminated SEVIS record rather than the school running any risk that it might be viewed as complicit in a visa violation.

Finally, plaintiffs themselves have presented convincing evidence that their SEVIS records were terminated by SEVP for failing to maintain status.  (Pl. Ex. 2 (dkt. #3-5) at 2; Pl. Ex. 5 (dkt. #3-8) at 3.)  Importantly, defendants' termination of plaintiffs' SEVIS

---

[4] The Foreign Affairs Manual, U.S. Department of State, is available at https://fam.stat.gov (last visited May 22, 2025).

records resulted in significant consequences to both, including John Doe #2's ability to continue his studies and pursue authorized OPT, and Jane Doe #1's ability to continue her doctoral program, maintain on-campus employment essential to that degree program, as well as a loss of her stipend.  When considering the practical implications and effects of defendants' actions on the plaintiffs and other students with F-1 status, defendants' assertion that terminating a SEVIS record does not affect a student's legal status rings hollow and does nothing to undercut the likelihood of plaintiffs' success on the merits.  *See John Doe,* 2025 WL 1399216, at *9 (Defendants' argument that merely terminating a student's SEVIS record does not also terminate his nonimmigrant status "offends common sense").[5]

## B.  The Privacy Act

The court need not delve deep into defendants' argument that it lacks subject matter jurisdiction because the APA's waiver of sovereign immunity does not extend to plaintiffs' challenge to the contents of their SEVIS records, which they insist is precluded by the Privacy Act.  (Dkt. #25, at 21-27.)  To begin, the APA's general waiver of sovereign immunity "does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought' by the plaintiff."  *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak,* 567 U.S. 209, 215 (2012) (quoting 5 U.S.C. § 702.)

---

[5] For these same reasons and for those stated on the record at the May 21 preliminary injunction hearing, defendants have abandoned any contention that there is no case or controversy here, although they continue to dispute irreparable harm as set forth below.  (Dkt. #25, at 17-18.)  The court likewise rejects defendants' equally meritless suggestion that UW-Madison had anything to do with terminating plaintiffs' SEVIS records or their student status. (*Id.* at 19.)

Defendants offer no basis for asserting that any statute precludes plaintiffs' APA claims, including the Privacy Act.

To the contrary, under the Privacy Act, agencies that maintain "a system of records" concerning individuals are required to do so "with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual." 5 U.S.C. § 552a(e)(5). Moreover, the Privacy Act expressly allows an individual to seek redress in federal court if an agency does not allow the individual to review his record, *see* § 552a(g)(1)(B), or if an agency has refused to amend a record, *see* § 552a(g)(1)(A). An individual also may challenge an agency's failure to maintain records with the accuracy, relevance, timeliness and completeness required by § 552a(e)(5), if the agency action had an "adverse" effect on him or her. § 552a(g)(1)(C). *E.g., Bassiouni v. Fed. Bureau of Investigation*, 436 F.3d 712, 718-19 (7th Cir. 2006) (involving a law professor's suit under the Privacy Act's enforcement provisions to amend or expunge FBI records of his contacts and activities that he maintained were erroneous).

This court and many others have held that the Privacy Act does not bar plaintiffs' claims under the APA. *See Isserdasani*, 2025 WL 1330188 at *5 ("Congress did not intend for the Privacy Act to be an 'exclusive' source of claims or remedies for alleged mishandling of records about individuals that impliedly forbids other relief under the APA.") (quoting *All. for Retired Americans v. Bessent*, No. CV 25-0313, 2025 WL 740401, at *19 (D.D.C. Mar. 7, 2025)); *see also Student Doe #1*, 2025 WL 1348503, at *11 (collecting numerous cases in which defendants' Privacy Act argument has been unsuccessful).

Here, plaintiffs have not filed suit to review their SEVIS records or to challenge the accuracy, relevance, timeliness or completeness of those records; rather, they are expressly

19

challenging defendants' unappealable *decision* to list their F-1 visa status as "terminated" in SEVIS, which effectively terminated their F-1 student status to continue their studies and post-graduate OPT, as well as their ability to engage in on-campus employment, without statutory or regulatory authority.   Moreover, plaintiffs cannot avail themselves of the Privacy Act itself to challenge that decision because it is not "'a vehicle for amending the judgments of federal officials . . . as those judgments are reflected in records maintained by federal agencies.'"  *Barnett v. United States*, 195 F. Supp. 3d 4, 7 (D.D.C. 2016) (quoting *Kleiman v. Dep't of Energy*, 956 F.2d 335, 337-38 (D.C. Cir. 1992)).  Thus, defendants fail to show that plaintiffs' APA claims are precluded by the Privacy Act.  *See Chen*, 2025 WL 1163653, at *6 (concluding in another SEVIS termination lawsuit that "the Privacy Act does not explicitly or implicitly forbid [plaintiff's] claims, and the APA waives sovereign immunity against those claims for purposes of seeking injunctive relief").

### C.  Finality of Agency Action

Defendants argue further that plaintiffs cannot succeed on their APA claims because changing his SEVIS record is not a "final agency action."  (Dkt. #25, at 29-31.)  Certainly, the APA "allow[s] any person 'adversely affected or aggrieved' by agency action to obtain judicial review thereof, so long as the decision challenged represents a 'final agency action' for which there is no other adequate remedy in a court."  *Webster v. Doe*, 486 U.S. 592, 599 (1988) (quoting 5 U.S.C. §§ 701–06).  For an "agency action" to be "final" under 5 U.S.C. § 704, however, two conditions must be satisfied: "First, the action must mark the consummation of the agency's decisionmaking process -- it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or

obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citation omitted). In other words, the final agency action requirement "asks whether a 'terminal event' has occurred." *Driftless Area Land Conservancy v. Rural Util. Serv.*, 74 F.4th 489, 493 (7th Cir. 2023) (quoting *Salinas v. R.R. Ret. Bd.*, 141 S. Ct. 691, 697 (2021)).

In *Jie Fang v. Dir. U.S. Immigr. & Customs Enf't*, 935 F.3d 172, 182 (3d Cir. 2019), the Third Circuit held that the termination of a student's F-1 status constitutes a final agency action because the termination marked the consummation of the agency's decision-making process. *Id*. The Third Circuit also reasoned that the termination order determines a right or obligation because it "end[s] the student's legal status in the United States." *Id*. at 180. Here, too, the termination of plaintiffs' SEVIS records is an agency action that implicates "rights and obligations," and but for this court's intervention by TRO and PI would have resulted in adverse "legal consequences." *Bennett*, 520 U.S. at 177-78.

Moreover, because neither immigration judges nor the Board of Immigration Appeals have authority to review SEVIS terminations or reinstatement requests, there is *no* "mechanism to review the propriety" of the original termination. *Jie Fang*, 935 F.3d at 182; *see also* 8 C.F.R. § 214.2(f)(16)(ii) ("The adjudicating officer will update SEVIS to reflect USCIS's decision. If USCIS does not reinstate the student, the student may not appeal the decision."). At this point, defendants do not and cannot dispute that the plaintiffs suffered significant consequences due to the interruption of their studies, in addition to mental anguish and other harms, all as a result of their SEVIS records being summarily terminated. On this record, therefore, the court rejects defendants' argument that the termination of plaintiffs' SEVIS record and their F-1 status was not a final agency

21

action that implicates their rights and from which there are legal consequences. *See Student Doe #1*, 2025 WL 1341711, at *9 (joining several other courts "to preliminarily conclude that the SEVIS terminations are not merely tentative or interlocutory in nature" and qualify as final agency actions) (citations omitted); *John Roe*, 2025 WL 1382930, at *6 (same).

Accordingly, plaintiffs have adequately demonstrated that termination of their SEVIS records is a reviewable final agency action and that they are substantially likely to prevail on their claim that defendants terminated their status in violation of the APA.

## II.    Irreparable Harm and Adequacy of Remedy at Law

"Harm is irreparable if legal remedies are inadequate to cure it." *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545 (7th Cir. 2021). "Inadequate does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Id*. (quotation marks omitted). As noted previously, but for entry of this court's TRO, plaintiffs faced devastating and irreparable harm due to the termination of their F-1 student record in SEVIS, including derailment of Jane Doe #1's doctoral program, loss of a stipend and project assistant position, and prevention of John Doe #2 completing his graduate degree just a week away from receiving a degree while also rendering him unable to pursue previously authorized OPT.

As this court and multiple other federal courts facing similar motions to enjoin the termination of students' F-1 status have recognized, the loss of timely academic progress alone is sufficient to establish irreparable harm. *E.g., Isserdasani*, 2025 WL 1330188, at *8 (citations omitted); *Parra Rodriguez*, 2025 WL 1284722, at *8 (collecting numerous

citations finding irreparable harm were a student's SEVIS record was terminated and entering injunctive relief).  Likewise, the loss of Jane Doe #1's stipend and her inability to work as a project assistant also amounts to irreparable harm because there is no adequate remedy at law for her to recover those damages, particularly since it would not only have interrupted (likely permanently) her progress toward the award of a doctorate degree, but put her at immediate risk of deportation.  *Liu*, 2025 WL 1233892, at *10.  Although John Doe #2 has now graduated, he still faced the loss of post-graduate employment opportunities through OPT to which he was entitled and likely to receive as an F-1 nonimmigrant student, as well as sudden deportation.  *See Saxena*, 2025 WL 1413266, at *7-8.

The evidence before the court establishing the link between the summary termination of plaintiffs' SEVIS records and the mental anguish and fear from the mere threat of arrest, detention, and deportation is a further irreparable harm that is not speculative.  *E.g., Ozturk v. Trump*, No. 25-cv-10695-DJC, 2025 WL 1009445, at *1 (D. Mass. Apr. 4, 2025) ("[W]ithout prior notice of the revocation of her student visa or the grounds asserted for same, Ozturk, a graduate student in Child Study and Human Development at Tufts University, was approached and surrounded by six officers (several wearing masks and/or hoods), stripped of her cellphone and backpack, handcuffed, and taken into custody in an unmarked vehicle.").  Indeed, plaintiffs have presented at least some evidence that their SEVIS records still identify them as having been terminated based on identification in a criminal records check, despite the fact that their involvement in the criminal justice system fell far short of any qualifying criminal activity in the form of a violent felony conviction.  8 C.F.R. § 214.1(g).

23

Finally, plaintiffs argue persuasively that derogatory information in their SEVIS records will likely trigger scrutiny by other agencies upon arrival at a port of entry, calling into question whether they would be able to go home and return to complete their studies or authorized OPT, or be forced to abandon their educational endeavors due to defendants' "unprecedented" efforts. *See Student Doe #1*, 2025 WL 1348503, at *12-13 (finding that the negative impact of notations in plaintiffs' SEVIS records was exacerbated by the defendants' extraordinary act of forcing not just one record termination, but hundreds, based on any interaction with law enforcement).

Although defendants point to the reinstatement of plaintiffs' SEVIS records and the new policy announced on April 26, claiming "no harm, no foul," even that policy still allows defendants to terminate unilaterally the plaintiffs' SEVIS records due to the revocation of their F-1 visas. (Dkt. #19-12, at 3) ("If [the U.S. State Department] revokes a nonimmigrant visa effective immediately, SEVP may terminate the nonimmigrant's SEVIS record based on the visa revocation with immediate effect, as such a revocation can serve as a basis of removability under INA § 237(a)(1)(B)."). As counsel for plaintiffs pointed out, this is at least an expansion of authority. (May 21, 2025 Hearing Trans. at 20.) Previously, if a foreign student's visa was revoked the student was still "permitted to continue to pursue their course of study in school, but upon departure from the United States, the SEVIS record is terminated, and the student must obtain a new visa from a consulate or embassy abroad before returning." *Jane Doe 1 et al. v. Bondi et al.*, No. 1:25-cv-1998 (N.D. Ga. Apr. 18, 2025) (citing Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016)) (Pl. Ex. 10 (dkt. #3-13) at 61.)

24

"While [d]efendants may have walked back the SEVIS terminations because of litigation around the country, they have not repudiated the prior decisions" before this or any other court. *Ortega Gonzalez*, 2025 WL 1355272, at *5. Indeed, a senior DHS official recently stated that students whose legal status had been temporarily restored "could still very well have it terminated in the future, along with their visas." Zach Montague and Hamed Aleaziz, *U.S. Restores Legal Status for Many International Students, but Warns of Removals to Come*, N.Y. Times (Apr. 25, 2025), https://www.nytimes.com/2025/04/25/us/politics/trump-student-visa-cancellations.html.).

Tellingly, at the hearing on May 21, 2025, defendants' counsel was still not authorized to give the court any assurance that plaintiffs' SEVIS records would not again be terminated if additional injunctive relief were not granted. Thus, plaintiffs have successfully demonstrated that the sudden termination of their SEVIS records remains a distinct possibility, thereby jeopardizing their education, research, career trajectories, and potentially causing a failure to maintain their F-1 status, which entails a corresponding risk of sudden removal. *See Ajugwe*, 2025 WL 1370212, at *10. As a result, plaintiffs have carried their burden of persuasion that, at least for the foreseeable future, they continue to suffer the real risk of irreparable injury for which they have no adequate remedy at law in the absence of injunctive relief. *Jie Fang*, 935 F.3d at 183-85; *see also Ortega Gonzalez*, 2025 WL 1355272, at *5 ("The termination of the Plaintiffs' SEVIS status presents as so arbitrary and capricious that the Court finds it impossible to trust that, absent an injunction, Defendants will not terminate Plaintiffs' student status yet again.").

### III.    Balancing of the Equities and Public Interest

Where a plaintiff satisfies the threshold requirement for a preliminary injunction, courts must then weigh "the irreparable harm the moving party will endure if the preliminary injunction is wrongfully denied versus the irreparable harm to the nonmoving party if it is wrongfully granted." *K.C. v. Individual Members of the Medical Licensing Bd. of Indiana*, 121 F.4th 604, 632 (7th Cir. 2024) (citations and internal quotation marks omitted). "This is a sliding scale -- the more likely [the moving party] is to win, the less the balance of harms must weigh in his favor; the less likely he is to win, the more it must weigh in his favor." *Id*. at 633 (alteration in original). Part of this balancing process also includes evaluating the public interest and the effects of entry of a preliminary injunction or its denial would have on nonparties. *Id.*

For reasons already stated, plaintiffs have demonstrated a strong likelihood of success on the claim that their SEVIS records and F-1 student status were wrongfully terminated in violation of agency regulations. Further, defendants' actions have threatened Jane Doe #1's ability to complete her doctoral degree and have placed in jeopardy John Doe #2's ability to engage in OPT, which he will be unable to undertake without an active SEVIS record and valid F-1 student status. In addition, defendants' actions have caused extreme anxiety and fear of detention by both plaintiffs, who came to UW-Madison to pursue graduate educational opportunities and maintained good standing, contributing to their classmates, the university, the State of Wisconsin, and all those who stand to benefit from their research. In contrast, defendants have yet to offer *any* valid reason for the previous termination of their SEVIS records and their little-to-no guarantee that it will not happen again.

26

Moreover, "[t]he public has a vested interest in a federal government that follows its own regulations." *Student Doe #1*, 2025 WL 1421371, at *3; *see also Student 1*, 2025 WL 1431186, at * 11 (citing *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) ("[T]here is generally no public interest in the perpetuation of unlawful agency action . . . . To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations.")). To that end, although defendants have argued "the public interest in enforcement of United States immigration laws is significant" (dkt. #25, at 32), the current record offers no assurance that DHS has complied with immigration laws or regulations in this case, nor that plaintiffs' SEVIS records were revoked due to any failure by plaintiffs to maintain their lawful F-1 status. Based on this record, therefore, plaintiffs have established that they faces irreparable harm, whereas defendants have demonstrated virtually no such harm, particularly by comparison. Because all relevant factors favor plaintiffs, the court concludes that they are entitled to preliminary injunctive relief. *See Liu*, 2025 WL 1233892, at *12 (granting a preliminary injunction in favor of an international student claiming that his SEVIS record and F-1 student status were terminated by the defendants in violation of the APA).

## IV.    Bond

Defendants have persisted in a request that these plaintiffs be required to post a bond under Fed. R. Civ. P. 65(c), which requires a party seeking preliminary injunctive relief to give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined." (Dkt. #14, at

30.) However, a district court may "waive the requirement of an injunction bond" when "the court is satisfied that there's no danger that the opposing party will incur any damages from the injunction." *Habitat Educ. Ctr. v. United States Forest Serv*., 607 F.3d 453, 458 (7th Cir. 2010) (finding "no reason to require a bond"). Defendants have still not identified any costs or damages they may incur as the result of entry of the TRO or an injunction issuing against them in this case.   Accordingly, plaintiffs shall not be required to post a bond pending enforcement of the preliminary injunction granted by this court.

ORDER

IT IS ORDERED that pending final adjudication of the issues in this case, plaintiffs Jane Doe #1 and John Doe #2's motion for a preliminary injunction is GRANTED as follows:

1) Defendants are enjoined from terminating plaintiffs' F-1 student status records from the Student and Exchange Visitor Information System ("SEVIS") without further showing and approval by this court.

2) Defendants are further enjoined from directly or indirectly enforcing, implementing, or otherwise taking any action or imposing any legal consequences as the result of a decision to terminate either plaintiff's SEVIS records.

Entered this 2nd day of June, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

28